IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____
                                          )
RYAN MILLIRON,                            )
                                          )
        *Plaintiff*,                       )
                                          )
v.                                        )   Civil Action No. 1:23-cv-1222
                                          )
NATIONAL ARCHIVES AND RECORDS )
ADMINISTRATION et al.,                    )
                                          )
        *Defendants*.                      )

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR IN CAMERA REVIEW OR, IN THE ALTERNATIVE, FOR DISCOVERY

### INTRODUCTION

Through this Freedom of Information Act (FOIA) suit, Plaintiff Ryan Milliron seeks disclosure of various categories of records that he believes will shed light on the 2016 breach of the Democratic National Committee's email servers and the subsequent federal investigation and prosecution of 12 Russian nationals. After it processed one category of records, Defendant U.S. Department of Defense (DOD) withheld one responsive record in full under FOIA Exemption 3. Mr. Milliron asked DOD to reconsider, and it reprocessed the record. When DOD again withheld the record in full after reprocessing, this time under Exemption 4, Mr. Milliron again protested that withholding was inappropriate. And again, as before, DOD agreed to determine whether reprocessing the record for a second time would be justified.

Not content to allow ordinary government processes to play out, Mr. Milliron filed the present motion less than a month after DOD transmitted its second final response. And, despite DOD's subsequent confirmation that it will indeed reprocess the record for a second time, Mr. Milliron has declined to withdraw his motion. The motion seeks in camera review of the record,

- 1 -

or, in the alternative, to serve discovery on various government agencies (parties and non-parties alike) and Georgia Tech (a nonparty). Such relief is both extraordinary in the context of FOIA litigation generally, and in any event is wholly without basis at the present juncture. DOD should instead be permitted to reprocess the record, and thereafter Defendants should (if at all) be allowed to justify all of their withholdings—not only for the particular record at issue in this motion, but for all categories requested from all three Defendants—that Mr. Milliron elects to challenge, in a single round of summary judgment motions practice. For these reasons, the Court should deny the motion.

## BACKGROUND

Mr. Milliron filed the present suit to compel Defendants DOD, the U.S. Department of Homeland Security (DHS), and the National Archives and Records Administration (NARA) to release records responsive to the twelve FOIA requests he submitted to them. *See* Compl. (ECF No. 1) ¶¶ 8-61. Of those requests, one sought to obtain from DOD "a copy of the August 7, 2016 Fancy Bear/APT 28 Attribution Analysis provided by Manos Antonakakis and David Dagon referenced in the September 25, 2022 letter to Senator Grassley." *Id.* ¶ 53.

On March 21, 2024, DOD made a final response to Mr. Milliron, withholding a responsive record in full under FOIA's Exemption 3. *See* Ex. 1, Mar. 21, 2024 Email from DOD to Ryan Milliron; 5 U.S.C. § 552(b)(3) (excluding from FOIA's disclosure obligation records that, *inter alia*, are "specifically exempted from disclosure by statute"); 10 U.S.C. § 3309(b) (prohibiting disclosure of contractor proposals to DOD). The final response noted that Exemption 3 applied because the responsive record formed part of a grant proposal. *See* Ex. 1. Additionally, the final response described underlying redactions made pursuant to another statute prohibiting disclosure, as well as Exemptions 4, 6, 7(E), and 7(F). *See id.*; 5 U.S.C. § 552(b)(4), (6), (7)(E), 7(F)

(exempting "trade secrets and commercial or financial information obtained from a person and privileged or confidential"; "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"; "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law"; and "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual" respectively).

Mr. Milliron protested that Exemption 3 was inapplicable to the record because a subcomponent of DOD allegedly "told Senator Grassley . . . that the researchers had already been selected for the" grant program at issue. Ex. 2, Mar. 21, 2024 Email from Ryan Milliron to DOD. DOD agreed to reprocess the record. Ex. 3, Mar. 25, 2024 Email from Simon Jerome to Ryan Milliron. Approximately seven weeks later, DOD made a second final release in which it again withheld the record in full. Ex. 4, May 8, 2024 Email from DOD to Ryan Milliron. The second release asserted Exemption 4's protections for trade secrets and confidential commercial information over the entire record. *Id.*; 5 U.S.C. § 552(b)(4). And once again, Mr. Milliron objected. On May 8, he wrote to DOD, stating his view that the agency's Exemption 4 assertion was "completely frivolous" and that he contemplated filing a motion for in camera review of the record. Ex. 5, May 8, 2024 Email from Ryan Milliron to Simon Jerome.

As before, Mr. Milliron's objection to DOD's second final release prompted the agency again to examine the basis for the Exemption 4 withholding and whether reprocessing was

appropriate. Despite assurances to Mr. Milliron that these conversations were underway, he filed the instant motion on June 6. *See generally* Mot. for In Camera Review or, in the Alternative, for Discovery (ECF No. 27). Thereafter, DOD agreed to reprocess the records for a second time. Even so, when asked to withdraw his motion for in camera review, Mr. Milliron declined. Ex. 6, June 14, 2024 Email from Ryan Milliron to Simon Jerome.

## ARGUMENT

**A. The Motion Is Premature.**

FOIA litigation follows a well-worn path. "Procedurally, district courts typically dispose of FOIA cases on summary judgment[.]" *Rugiero v. DOJ*, 257 F.3d 534, 544 (6th Cir. 2001) (citation omitted). When a defendant agency has finished searching for and processing records responsive to a plaintiff's FOIA request, it is afforded the opportunity to demonstrate its compliance with FOIA (including the obligation to release all non-exempt information it locates) by means of affidavits and other evidence. *ACLU of Mich. v. FBI*, 734 F.3d 460, 465 (6th Cir. 2013); *see also Blanchard v. EOUSA*, No. 1:22-cv-539, 2024 WL 218586, at *34 (W.D. Mich. Jan. 3, 2024) (Green, J.) (describing a *Vaughn* index, used to justify redactions and withholdings).

At summary judgment, the agency's proffered evidence receives a "presumption of good faith." *ACLU of Mich.*, 734 F.3d at 465 (quoting *Rugiero*, 257 F.3d at 544). And where that presumption remains unrebutted, "the court's primary role is to review the adequacy of the affidavits and other evidence." *Rugiero*, 257 F.3d at 544 (citation omitted). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Id.* (quoting *Ingle v. DOJ*, 698 F.2d 259, 265 (6th Cir. 1983), *overruled on other grounds by DOJ v. Landano*, 508 U.S. 165 (1993)).

Applying these familiar principles here, the Court should deny the motion and permit the three defendant agencies to complete their processing of Mr. Milliron's requests. At that time, any remaining contested legal issues related to the agencies' withholdings or redactions may be addressed via cross-motions for summary judgment, and resolved on the basis of the evidence the government submits. *Rugiero*, 257 F.3d at 544; *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012).

Mr. Milliron's request for in camera review would circumvent this ordinary process. To start, in camera review would be premature, as it would have the Court adjudicate a position that the agency has indicated is not yet final. *See* Ex. 6. DOD notified Mr. Milliron on June 14 of its intent to reprocess the record. Reprocessing of this sort is routine, unproblematic, and in fact suggestive of the agency's good faith. *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 79 (D.D.C. 2020) ("DIA was entitled to reprocess the records and change its mind about whether they were classified. Agencies frequently do this, and oftentimes they realize that they can release documents they previously thought should be exempt."); *id.* at 80 ("Agencies should be encouraged to review records multiple times . . . Punishing DIA for double-checking its records would only hinder the agency's incentive to take another look at its records in subsequent cases."); *Reporters Comm. for Freedom of Press v. FBI*, No. 17-cv-1701, 2022 WL 13840088, at *6 (D.D.C. Oct. 21, 2022) ("The Court declines to penalize the agency for taking additional steps to comply with its FOIA obligations and release more information in response to the requester's briefing."); *Walker v. Donovan*, No. 19-cv-3784, 2023 WL 2734216, at *10 (D.D.C. Mar. 31, 2023) (no bad faith existed where agency voluntarily reprocessed files). Judicial review of DOD's second final release now would thus be untimely.

The motion is also premature for a second reason; namely, it seeks judicial resolution in a

fragmentary manner of the propriety of one (of three) agencies' discharge of its FOIA obligations, divorced from the other legal issues present in this litigation and that might arise in the future. The Court instead should permit all three agencies to complete their searches and processing, and then resolve any of Mr. Milliron's legal challenges in a single round of summary judgment briefing. Such an approach would advance the interest of economy for the Court and parties alike.

Mr. Milliron's proffered justifications for in camera review do not address why the ordinary practice—completion of processing and summary judgment briefing on the basis of a final record—is inapposite to this case. Rather, he insists that "[w]ithout this court's review, a series of material misstatements will go unchallenged and documents of significant national interest will go unproduced." Mot. at PageID.157. But those conclusory statements, even putting aside the incorrect notion that the government misstated certain facts, assumes the final result of reprocessing will be identical, and would result in piecemeal and premature adjudication of exemptions prior to the completion of processing.

Likewise, the motion intimates that the (short) period of time between when Mr. Milliron received the second final release and when he filed his motion represents intolerable delay. *See id.* ("After a month, the government has been unable to produce any explanation for their exemption claims[.]"). Not so, even if the Court credited Mr. Milliron's apparent impression that one month is a long time. *See S. Appalachian Biodiversity Proj. v. U.S. Forest Serv.*, 500 F. Supp. 2d 764, 769 (E.D. Tenn. 2007) ("Mere tardiness, without more, does not equal bad faith." (citing *Rugiero*, 257 F.3d at 545)). Indeed, third-party submitters of information encompassed within agency records have legal interests that the agency is bound to respect. *See* 32 C.F.R. § 286.10(c) (listing instances in which DOD must provide notice to submitters of information potentially falling under Exemption 4), (e) (requiring DOD to afford those submitters an opportunity to

object); *see generally Entergy Gulf States La., LLC v. EPA*, 817 F.3d 198 (5th Cir. 2016) (describing third-party intervention in "reverse-FOIA" suits to assert FOIA exemptions over material within agency's possession). In this context, DOD's deliberative process did not exceed an acceptable period of time.

### B. In Camera Review and Discovery Are Inappropriate.

**1.** The Sixth Circuit has cautioned that in camera review is not only to be used "sparingly." *Rugiero*, 257 F.3d at 544 (citation omitted). Rather, it should be employed only "when no other procedure allows review of the agency's response to a FOIA request." *Id.*; *see also United States v. Renal Care Grp.*, 696 F.3d 518, 527 (6th Cir. 2012) ("One such alternative procedure [to in camera review] is a detailed affidavit, which is entitled to a presumption of good faith."); *Ingle*, 698 F.2d at 259 ("no court should consider *in camera* review if a Vaughn Index can adequately resolve the issue" (footnote omitted)). But here, DOD has not yet brought processing to its conclusion, much less had the opportunity to justify any final redactions and withholdings through a *Vaughn* index.

Mr. Milliron's unfounded allegations of "egregious bad faith," Mot. at PageID.158, are an unconvincing reason for the Court to engage in in camera review of the record. What precisely Mr. Milliron considers evidence of bad faith is left unsaid. Rather, he seems to suggest that DOD's decision to reprocess the records itself proves bad faith. *See id.* at PageID.157-58. If anything, the opposite is true. *Khatchadourian*, 453 F. Supp. 3d at 79, 80; *ACLU v. DOD*, 628 F.3d 612, 627 (D.C. Cir. 2011) ("To the contrary, we find that the government demonstrated good faith by voluntarily reprocessing the documents after the President declassified the OLC memoranda and the CIA Inspector General's report. As in previous FOIA cases, we decline to penalize a government agency for voluntarily reevaluating and revising its FOIA withholdings." (citation

omitted)); *Mil. Audit Proj. v. Casey*, 656 F.2d 724, 753-54 (D.C. Cir. 1981) ("emphatically reject[ing]" the contrary position). Mr. Milliron's motion for in camera review should thus be denied.

**2.** Discovery, too, is an extraordinary measure in FOIA cases, and not appropriate in this case. Because FOIA litigation ordinarily turns on legal issues—chiefly, the adequacy of the agency's search and the propriety of any subsequent withholdings or redactions—discovery is not necessary in the mine run of cases. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (citing *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991)); *see also Rugiero*, 257 F.3d at 544; *CareToLive v. FDA*, 631 F.3d 336, 345 (6th Cir. 2011). In the limited set of FOIA cases where discovery has been permitted, courts have allowed it to probe a narrow ambit of FOIA-related topics directly relevant to the search and processing undertaken in the particular case at hand. *See, e.g.*, *Heily v. Dep't of Comm.*, 69 F. App'x 171, 174 (4th Cir. 2003) ("When the courts have permitted discovery in FOIA cases, it generally is limited to the scope of the agency's search and its indexing and classification procedures." (citations omitted)).

Here, in contrast, Mr. Milliron seeks to use discovery for improper, non-FOIA-related ends. Tellingly, he expends no effort in identifying how his proposed scope of discovery—to include "subpoenas for communications between the government and Georgia Tech" and for DOD's and the Department of Justice's files "relating to taskings of Dagon and Antonakakis, as well as depositions of "the FOIA processors involved in asserting unsupported exemption claims," Mot. at PageID.172 —would relate to the legal issues present in this case. That error is fatal. *In re Clinton*, 970 F.3d 357, 365 (D.C. Cir. 2020) ("The mere suspicion of bad faith on the part of the government cannot be used as a dragnet to authorize voluminous discovery that is irrelevant to the remaining issues in a case.").

Rather, the discovery motion appears to represent a continuation of Mr. Milliron's citizen-investigatory efforts, and a quest to confirm his suspicions of a large-scale government cover-up. *See* Mot. at PageID.172 ("Plaintiff has serious concerns regarding the government's conduct in the investigation of the DNC cyber-intrusion, DARPA's responses to media and Congressional inquiries, and the government's response(s) here. The responsive record is critically needed as part of a larger journalistic investigation that Plaintiff is conducting under the knowledge and belief that the government has engaged in gross misconduct."). But discovery in a FOIA case is not a proper vehicle by which to obtain the information Mr. Milliron believes he might find. *See CareToLive*, 631 F.3d at 345 ("A requestor is not entitled to discovery based on [his] hope that [he] might find additional documents or [his] belief that the agency is withholding information." (citation omitted)); *cf. Lane*, 523 F.3d at 1134 (improper discovery request sought "the very information that is the subject of the FOIA complaint"). And as before, Mr. Milliron's halfhearted invocations of bad faith are insufficient to convert his fishing expedition into a procedurally proper motion. *See CareToLive v. FDA*, No. 2:08-cv-005, 2009 WL 1794489, at *6 (S.D. Ohio June 23, 2009) ("'[I]n order to justify discovery, the plaintiff must make a showing of bad faith on the part of the agency.' . . . With regard to bad faith, Plaintiff offers several factually inaccurate statements and conspiracy theories[.]" (quoting *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994))).

Even if Mr. Milliron sought discovery for permissible ends—in particular, to probe the government's search methodology under FOIA, *see generally* Mot.—the time to make such a showing of need is after DOD has presented its case through sworn declarations at summary judgment. *Taylor v. Babbitt*, 673 F. Supp. 2d 20, 23 (D.D.C. 2009) ("[I]n the exceptional case in which a court permits discovery in a FOIA action, such discovery should only occur after the government has moved for summary judgment."); *Tamayo v. DOJ*, 544 F. Supp. 2d 1341, 1343

(S.D. Fla. 2008) (same); *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("The plaintiff's early attempt in litigation of this kind to obtain a *Vaughn* Index and to take discovery depositions is inappropriate until the government has first had a chance to provide the court with the information necessary to make a decision on the applicable exemptions.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the motion.

Date:  June 20, 2024                                    Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

 /s/ *Simon Gregory Jerome*
SIMON G. JEROME
D.C. Bar No. 1779245
Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Telephone: (202) 514-2705
Simon.G.Jerome@usdoj.gov

*Counsel for Defendants*