UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN MILLIRON,

        Plaintiff,

v.

UNITED STATES DEPARTMENT
OF DEFENSE,

        Defendant.
_____/

Hon. Robert J. Jonker
U.S. District Judge

Hon. Phillip J. Green
U.S. Magistrate Judge

Case No. 1:23-cv-1222

## REPORT AND RECOMMENDATION

Plaintiff, Ryan Milliron, brought this action on November 20, 2023, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.*, against three federal agencies: the National Archives and Records Administration (NARA), the U.S. Department of Homeland Security (DHS), and the Department of Defense (DoD). (Compl., ECF No. 1).  Plaintiff voluntarily dismissed the claims against NARA and DHS after those agencies produced documents responsive to his FOIA requests. (Jan. 13, 2025, Stip. Order, ECF No. 52).

In the underlying FOIA request to the DoD, Plaintiff sought information regarding a report produced by Georgia Institute of Technology (Georgia Tech) to a research component of the DoD.  A redacted version of that report was produced to Plaintiff under several asserted FOIA exemptions.  The assertion of those exemptions remain at issue in this case.

Presently before the Court is the DoD's motion for summary judgment. (ECF No. 55). Plaintiff opposes the motion (ECF No. 56),[1] and the DoD has replied (ECF No. 57). This case was referred to the undersigned judicial officer for all pretrial purposes pursuant to 28 U.S.C. § 636(b)(1)(A), and for a report and recommendation on all dispositive matters under 28 U.S.C. § 636(b)(1)(B). (Order of Reference, ECF No. 3). The undersigned has determined that oral argument is unnecessary. For the reasons articulated herein, the undersigned recommends that the DoD's motion for summary judgment (ECF No. 55) be granted.

## Statement of Facts

At issue here is a FOIA request Plaintiff made to the DoD seeking the release of a report produced by Georgia Tech for the Defense Advanced Research Projects Agency (DARPA). (ECF No. 55-1, PageID.311). DARPA is a research component of DoD, and it "conducts and funds projects to enhance the capabilities of the U.S. Military." (Whited Decl. ¶¶ 15-16, ECF No. 55-2, PageID.341). DARPA developed a research program called "Enhanced Attribution," now concluded, that funded research into ways of detecting and revealing those engaged in malicious cyber campaigns. (*Id.* ¶ 17).

In August 2016, Georgia Tech's Astrolavos Lab submitted a forty-page report to DARPA, entitled "Fancy Bear/APT28 Attribution Analysis." (Whited Decl. ¶¶ 3,

---

[1] In his responsive brief, Plaintiff asks the Court to strike certain parts of the DoD's summary judgment memorandum, as well as portions of an affidavit filed in support of the motion. (*See* Pltf's Mem. at 5-6, ECF No. 56, PageID.401-402). The Court has denied that request in an order entered this date. (ECF No. 59).

11, 19).  This report analyzed a July 2016 cyber-attack campaign conducted by a Russian cyber espionage group named "Fancy Bear," also known as APT28, the attack of which included an intrusion into the email server for the Democratic National Committee.  (*Id*. ¶ 11).  Georgia Tech submitted the "Fancy Bear" report as a "proof of concept" to illustrate Georgia Tech's capabilities in the area of cyber-attack attribution and to convince DARPA to allow it to participate in the Enhanced Attribution program.  (*Id*. ).  The report contained "commercial information illustrating Georgia Tech's capabilities related to forthcoming DARPA research and development (R&D) program efforts, particularly DARPA's Enhanced Attribution program."  (*Id*. ¶ 12).

In producing the "Fancy Bear" report, Georgia Tech relied on a proprietary research method that integrates "statistical features" and "data sources" into an algorithmic attribution technology.  (*Id*. ¶ 18).  The features of the algorithm is analogized as "akin to a combination of a recipe and a roadmap: the recipe combines various sources of data to yield a technology product, which researchers use like a roadmap to find the source of a particular cyber-attack."  (*Id*.).  The technology is commercially valuable, as indicated by the fact that Georgia Tech has licensed its use to a commercial enterprise – Voreas Laboratories – in exchange for consideration and its agreement to keep Georgia Tech's proprietary information confidential.  (*Id*. ¶ 24).

On September 25, 2023, Plaintiff submitted a FOIA request to the DoD seeking "a copy of the August 7, 2016 Fancy Bear/APY 28 Attribution Analysis provided by

Manos Antonakakis and David Dagon referenced in the September 25, 2022 letter to Senator [Charles] Grassley." (*Id.* ¶ 2). The Secretary of Defense Office of General Counsel notified Plaintiff on March 21, 2024, that it was withholding the record in full under FOIA Exemptions 3 and 4. (*Id.* ¶ 4 & n.1). On November 21, 2025, after additional communications from Plaintiff and subsequent reviews, Plaintiff was sent a copy of the "Fancy Bear" report subject to redactions under FOIA Exemptions 3, 4, 6, 7(C), and 7(E). (*Id.* ¶ 6).[2] A copy of the finally produced redacted report, with FOIA exemption annotations, is found in the record as Exhibit 2 to the DoD's motion for summary judgment. (ECF No. 55-3).

The DoD filed its motion for summary judgment on February 28, 2025. (ECF No. 55). Plaintiff responded on March 10, 2025. (ECF No. 56). The DoD filed its reply on March 24, 2025. (ECF No. 57).

## **Summary Judgment Standards**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

---

[2] The DoD has elected not to defend the use of Exemption 3 in this motion. (Whited Decl. ¶ 8, ECF No. 55-2, PageID.340). This does not result in the release of any additional information, however, as the information withheld under Exemption 3 was also withheld under other exemptions. (*Id.*).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence

presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

## FOIA Standard of Review

The FOIA requires federal agencies to "promptly" make available records reasonably described in a request. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 543 (6th Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A)). An agency may withhold a responsive record only if one of the statutory exceptions apply. *See* 5 U.S.C. § 552(a)(3)(A). The FOIA's disclosure provisions are to be interpreted broadly, as the Act was enacted as a result of congressional interest in accommodating the public's right of access to government documents not explicitly exempted. *See, e.g., John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Statutory exemptions are to be narrowly construed, and the agency bears the burden of sustaining its action. 5 U.S.C. §§ 552(a)(4)(B), 552(b), 552(d); *see Rugiero*, 257 F.3d at 543. A denial of a FOIA request is reviewed by this Court *de novo*. *See Rugiero*, 257 F.3d at 543; *see also* 5 U.S.C. § 552(a)(4)(B).

District courts typically resolve FOIA cases on summary judgment, given that the primary question is a legal one: "whether the withheld documents are covered by one of the statutory exemptions." *Am. Civil Liberties Union of Mich. v. F.B.I.*, 734 F.3d 460, 465 (6th Cir. 2013). "[T]o facilitate review and the adversarial process, the government must support its position with detailed affidavits and a descriptive index with a 'relatively detailed analysis' of 'manageable segments' of the

documents." *Id.* (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)). The so-called Vaughn index is "a routine device through which the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions from disclosure under the Act." *Rugiero*, 257 F.3d at 544 (citing *Jones v. F.B.I.*, 41 F.3d 238, 241-42 (6th Cir. 1994)). An agency's Vaughn index and supporting affidavits are entitled to a presumption of good faith. *Id.* (citing *Jones*, 41 F.3d at 242). "Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence." *Rugiero*, 257 F.3d at 544 (citing *Ingle v. Dep't of Justice*, 698 F.2d 259, 265 (6th Cir. 1983)).

## Analysis

The only record at issue here is the forty-page "Fancy Bear" report produced by Georgia Tech's Astrolavos Lab and provided to DARPA to demonstrate the lab's ability to successfully conduct cyber-attack attribution. According to Georgia Tech and the DoD, the report contains sensitive proprietary information used to analyze the 2016 "hack" of the Democratic National Committee's email server. (ECF No. 55-1, PageID.318). That information, which includes both the statistical features the lab considers in attributing cyber-attacks and the data sources upon which the algorithmic component of its technology relies, is what has been withheld from the FOIA production. (*Id.*).

The DoD asserts that the information redacted from the "Fancy Bear" report was properly withheld, as it "falls within the heartland of the 'confidential commercial information' protected by Exemption 4, without which protection Georgia Tech would suffer economic harm." (*Id.*). In the alternative, the DoD argues that the redacted information was properly withheld under Exemptions 6 and 7(C), to protect the privacy interests of third parties, and Exemption 7(E), to protect the techniques by which DARPA, through its research partners, enforces the law. (*Id.*).

Plaintiff, on the other hand, asserts that the "Fancy Bear" report "constitutes fundamental research, as defined by federal regulations and Georgia Tech's policies," which he argues precludes the application of Exemptions 4, 6, 7(C), and 7(E). (ECF No. 56, PageID.397). Plaintiff further asserts that the redacted information lacks a commercial character and confidentiality, as required for Exemption 4, and he contends that the DoD's claim regarding competitive harm is "speculative and untenable." (*Id.* at PageID.399-400).

Having considered the parties' submissions, the undersigned judicial officer finds that the DoD's assertions of Exemptions 4, 6, 7(C), and 7(E) are amply supported by the record.[3] Accordingly, the undersigned recommends that the Court grant summary judgment to the DoD.

---

[3] The DoD relies on the declaration of Joseph Whited, the DARPA official responsible for overseeing FOIA (ECF No. 55-2), and the redacted "Fancy Bear" report, annotated to reflect the FOIA exemptions asserted, which served as the agency's final response to Plaintiff's FOIA request (ECF No. 55-3). This is sufficient, in the undersigned judicial officer's view, to allow the Court to conduct a meaningful review of the DoD's actions in this matter.

1. Exemption 4

FOIA Exemption 4 allows an agency to withhold, among other things, "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The DoD asserts that the redactions from the "Fancy Bear" report fall within the ambit of Exemption 4 because it constitutes commercial or financial information, obtained from a person,[4] that is privileged or confidential. (ECF No. 55-1, PageID.318 (citing *Southern Envt'l. Law Ctr. v. Tenn. Valley Auth.*, 659 F. Supp. 3d 902, 912 (E.D. Tenn. 2023) and *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). The undersigned agrees.

According to Joseph Whited, the DARPA Chief of Staff, Georgia Tech submitted the "Fancy Bear" report "as commercial information illustrating [its] capabilities related to forthcoming DARPA research and development (R&D) program efforts, particularly DARPA's Enhanced Attribution program." (Whited Decl. ¶ 11, ECF No. 55-2, PageID.340). As noted above, the algorithmic technology Georgia Tech developed to identify cyber-attackers uses certain "statistical features" and "data sources." (*Id.* ¶¶ 18, 21). Georgia Tech provided this information to DARPA under "an implicit assurance" that it would remain confidential, to the extent permitted by law. (*Id.* ¶ 21). This technology is the subject of a 2019 "Exclusive Software Licensing Agreement" with Voreas Laboratories. (*Id.* ¶¶ 23-24). Public

---

[4] The term "person" is defined to include "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). This necessarily includes Georgia Tech.

release of this information would likely harm Georgia Tech's commercial interests in two ways: (1) would-be competitors could "reverse engineer" the algorithm and use it to compete commercially with Georgia Tech; and (2) potential cyber-attackers could use the information to undermine the algorithm's effectiveness. (*Id.* ¶ 25).

Plaintiff fails to offer any *evidence* to contradict the DoD's proofs in support of Exemption 4, nor does he provide an *evidentiary* basis to find that the DoD's proofs were offered in bad faith. Instead, Plaintiff repeatedly insists that there are material facts in dispute, and that that the redacted information constitutes "fundamental research," ineligible for protection under Exemption 4. (ECF No. 56, PageID.398-399). As to the first, Plaintiff fails to articulate specific disputed facts that could alter the outcome in this matter.

As to the latter, Plaintiff's characterization of the redacted information as "fundamental research" is based on speculation, reliance on inapplicable export-control regulations, and a misinterpretation of a court filing in a False Claims Act lawsuit (*United States ex rel. Craig v. Georgia Tech. Research Corp.* Case No. 1:22-cv-2698 (N.D. Ga.)). Moreover, that characterization is not dispositive to the issue now before the Court, as "fundamental research" is not categorically excluded from FOIA exemptions. While research results are generally shared publicly, that is certainly not always the case. As Mr. Whited explained, what is being withheld from the "Fancy Bear" report is not the results of research, but rather, "methodologies, techniques, and processes" regarding an algorithmic technology Georgia Tech developed. (Whited Decl. ¶ 22, ECF No. 55-2, PageID.344). This is information

-10-

Georgia Tech included in a "proof of concept" report with an understanding that it would be kept private. (*Id.* ¶ 21; *see also* "Fancy Bear" Report at 2, n.1, ECF No. 55-3, PageID.353 (noting that Georgia Tech considered the information in the report "confidential," and that it was not intended for "public distribution")).

Having found sufficient justification for the assertion of FOIA Exemption 4, the Court need not address the other asserted exemptions, as the redactions under those exemptions are duplicative of those covered by Exemption 4. Nevertheless, the undersigned will briefly address Exemptions 6, 7(C) and 7(E) as an alternative basis for granting the DoD's motion for summary judgment.

2. Exemptions 6 and 7(C)

FOIA Exemption 6 protects from public disclosure "personnel and . . . similar files." 5 U.S.C. § 552(b)(6). The term "similar files" is to be interpreted broadly to include "detailed Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600-02 (1982); *see also Cizek v. Dep't of Defense*, Case No. 23-0023, 2024 WL 4332111, at *8 (D.D.C. Sept. 27, 2024) ("The purpose of Exemption 6 is 'to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" (quoting *Washington Post*, 456 U.S. at 599)).

Similarly, Exemption 7(C) covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Privacy

-11-

interests include protection against the disclosure of "personal matters." *Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 762 (1989).

Before invoking either exemption, the agency must balance the privacy interest at stake against the public's interests in disclosure. *Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (Exemption 6); *Reporter's Comm.*, 489 U.S. at 776 (Exemption 7(C)). While Exemption 7 prohibits disclosure if it "could reasonably" result in an unwarranted invasion of privacy, 5 U.S.C. § 552(b)(7)(C), Exemption 6 is a bit more weighted in favor of disclosure, requiring a "clearly unwarranted invasion of personal privacy." *Id.* at § 552(b)(6).

The DoD asserts that the information in the "Fancy Bear" report was compiled for law enforcement purposes; that the individuals identified in the report have a valid privacy interest in nondisclosure; that there is no cognizable public interest in disclosure; and that harm would result from the disclosure of information withheld under Exemptions 6 and 7(C). (ECF No. 55-1, PageID.327-32). The undersigned agrees.

The "Fancy Bear" report was submitted to DARPA's "Enhanced Attribution" program, which funded ways of detecting and revealing those engaged in malicious cyber campaigns. (Whited Decl. ¶ 17, ECF No. 55-2, PageID.341-342). DARPA is a research component of the DoD, and it was executing a law-enforcement mission in gathering information that could assist in detecting potentially illegal activity – cyber hacking. (*Id.* ¶ 31). That Georgia Tech is not a law enforcement agency is immaterial to this analysis. *See John Doe Agency*, 493 U.S. at 153. "A record is

compiled for law enforcement purposes when it 'focus[es] directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." *McMichael v. Dep't of Defense*, 910 F. Supp. 2d 47, 53 (D.D.C. 2012) (quoting *Rural Housing All. v. Dep't of Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)).  Potential cyber-attacks fall squarely within the ambit of law enforcement interests.

The DoD has redacted information pertaining to third parties, including internet protocol (IP) addresses, email addresses, names, and photographs.  (Whited Decl. ¶ 32).  Disclosure of this information would infringe upon the privacy interests of these individuals.  *See, e.g., Sutton v. I.R.S.*, Case No. 05 C 7177, 2007 WL 30547, at *6 (N.D. Ill. Jan. 4, 2007); *Broward Bulldog v. Dep't of Justice*, 939 F.3d 1164, 1184 (11th Cir. 2019).  Given the context of the "Fancy Bear" report, it is reasonably foreseeable that disclosing such personal information could subject the individuals to "annoyance, threats, or harassment in their private lives."  (Whited Decl. ¶ 30).

In balancing these privacy interests against the public's interests in disclosure, the DoD correctly notes that "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.' " *Fair Labor Relations Auth.*, 510 U.S. at 495 (quoting *Reporters Comm.*, 489 U.S. at 775).  The identity of the requestor and the reasons for the request are immaterial to this analysis. *See Reporters Comm.*, 489 U.S. at 771.  Plaintiff has failed to proffer a valid public interest to be

served by the disclosure of personal identifying information regarding persons involved in the "Fancy Bear" project.

3. Exemption 7(E)

Exemption 7(E) protects law enforcement "techniques" that "could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The term "technique" is "a technical method of accomplishing a desired aim."  *Allard K. Lowenstein Int'l Human Rights Project v. D.H.S.*, 626 F.3d 678, 682 (2d Cir. 2010).

As is evident from the DARPA Chief of Staff's description, the "methodologies, techniques, and processes" regarding the algorithmic attribution technology Georgia Tech developed to identify cyber attackers fall squarely within the ambit of a law enforcement technique.  (*See* Whited Decl. ¶¶ 22, 36-38, ECF No. 55-2, PageID.344, 349-50).  The foreseeable harm resulting from public disclosure of this information is equally manifest, as it would thwart the very purpose of the technology.

Accordingly, the undersigned finds that the DoD sustained its burden regarding its assertion of Exemptions 6, 7(C), and 7(E).  These serve as an alternate basis for granting the DoD's motion for summary judgment.

## Conclusion

For the foregoing reasons, the undersigned judicial officer recommends that the DoD's motion for summary judgment (ECF No. 55) be granted.  The undersigned further recommends that the Court enter judgment in favor of the DoD.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                        Respectfully submitted,

Date: August 8, 2025                            /s/ Phillip J. Green
                                                        PHILLIP J. GREEN
                                                        United States Magistrate Judge